UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION


ALLSTATE INSURANCE COMPANY,                         No. 3:14-cv-00113-AC

                Plaintiff,                         FINDINGS AND
                                                    RECOMMENDATION

      v.

DEBBY ANNE MORGAN, ADAM WILLIAM
MORGAN, DIONTE JOVAN SMITH,
SAMANTHA JENNIFER MYERS,
DANCE PARTY OBSESSIONS LLC
D/B/A DPO PRODUCTIONS, AND
JONATHON PATRICK NICHOLSON,

                Defendants.
_____

ACOSTA, Magistrate Judge:

*Introduction*

      Plaintiff Allstate Insurance Company ("Allstate") filed this action to obtain a declaration that

Allstate is not obligated to defend or indemnify Adam William Morgan ("Adam") and Debby Anne

Morgan ("Debby") (collectively, "the Morgans") for the claims alleged against them in the second

amended complaint filed by Jonathon Patrick Nicholson ("Nicholson") in state court on May 6, 2014 (the "Nicholson Complaint").  Allstate, Debby, and Adam have filed cross-motions for summary judgment on Allstate's duty to defend the Morgans under the terms of the Homeowners Policy Allstate issued to Debby on June 21, 2011 (the "Policy").  Debby and Adam also seek a stay of this action until the entry of final judgment in the underlying case.  Nicholson recently moved to join Debby's motion and the court granted that motion at oral argument.

The Policy's Criminal Acts Exclusion Clause bars coverage for bodily injury that results from the criminal act of any insured.  Because Adam's criminal act caused Nicholson's injury, the Morgans are not covered under the Policy, and Allstate has no duty to defend or indemnify the Morgans.  Accordingly, Allstate's motion for summary judgment should be granted Adam and Debby's motions for summary judgment should be denied.  Because the Criminal Acts Exclusion Clause and established facts are dispositive of the issue, the motion to stay should be denied.

*Background*

I.  Underlying Incident

On September 4, 2011, Adam hosted a party attended by friends and acquaintances in the home of his mother, Debby.  (Nicholson Compl. ¶ 2.)  Nicholson was among those at the party. (Nicholson Compl. ¶ 6.)  At this party, Adam and three other attendees assaulted Nicholson. (Nicholson Compl. ¶ 5; Foley Decl. Exh. 3.)  As a result of the assault, Nicholson received medical and dental care for severe and permanent injuries, including fractures to his face, damage and loss of vision in one of his eyes, cracked teeth, and a concussion.  (Nicholson Compl. ¶¶ 8-9.)

II.  Adam's Criminal Charges

Adam was criminally charged for  participating in the assault and eventually pleaded guilty

to Assault 3.  (Foley Decl. Exh. 3.)  In his Petition to Enter Plea, Adam represented that:  "[o]n Sept

4th in Marion Co. I did unlawfully and recklessly while being aided by another person actually

present cause physical injury to Jonathan Nicholson."  (Foley Decl. Exh. 3.)

III.  The Nicholson Complaint

Nicholson filed his complaint in Marion County Circuit Court asserting negligence claims

against the Morgans and additional claims against the others who participated in the altercation or

were responsible for the party.[1]  (Nicholson Compl.)  Nicholson specifically alleges the Morgans

were negligent in:

> (a) [] permitting the presence of persons they knew or had reason to know tended to
> use and abuse of alcohol, marijuana, other street drugs, and were prone to violence;
>
> (b) [] failing to warn plaintiff of the presence of persons they knew or had reason to
> know tended to use and abuse of alcohol, marijuana, other street drugs, and were
> prone to violence;
>
> © [] failing to provide adequate security for the party sufficient to protect participants
> and plaintiff;
>
> (d) [] failing to instruct plaintiff to leave the party, or otherwise provide for his safe
> departure from the premises.
>
> As a result of defendants' negligence, plaintiff suffered [] injuries and [] economic
> and non-economic damages . . . .

(Nicholson Compl. ¶¶ 13-14.)

IV.  The Policy

Allstate relies on certain defined terms and express provisions in the Policy to show it has

---

[1] The Nicholson Complaint alleges claims of wanton misconduct against defendants
Dionte Jovan Smith, Samantha Jennifer Myers, and Joey Michael McPherson and a negligence
claim against defendant Dance Party Obsessions LLC.

no duty to defend or indemnify the Morgans.  Relevant terms from the Policy's definition section include:

1.  "**You**" or "**your**" —  means the person named on the Policy Declarations as the insured and that person's resident spouse.

2.  "**Allstate**," "**we**," "**us**," or "**our**" — means the company named on the Policy Declarations.

3.  "**Insured person(s)**" —  means **you** and, if a resident of **your** household:
    a)  any relative; and
    b)  any dependent person in **your** care.

    ***

4.  "**Bodily injury**" —  means physical harm to the body, including sickness or disease, and resulting death . . . .

    ***

9.  "**Occurrence**" — means an accident, including continuous or repeated exposure to substantially the same general harmful conditions during the policy period, resulting in bodily injury or property damage.

(Foley Decl. Exh. 5 at 25-26.)

In the Insuring Agreement section, the Policy also included a "joint obligations" clause which provides:

The terms of this policy impose joint obligations on persons defined as an **insured person**.  This means that the responsibilities, acts and failures to act of a person defined as an **insured person** will be binding upon another person defined as an **insured person**.

(Foley Decl. Exh. 5 at 27.) (the "Joint Obligations Clause.")

Allstate's obligations for family liability and guest medical protection are found in Coverage X of the Policy.  Under Coverage X, Allstate agreed to "pay damages which an **insured person** becomes legally obligated to pay because of **bodily injury** or **property damage** arising from an

FINDINGS AND RECOMMENDATION            4                            [AMC]

**occurrence** to which this policy applies, and is covered by this part of the policy." (Foley Decl. Exh. 5 at 42.)  In the event an insured person is sued, Allstate also agreed to "provide a defense . . . even if the allegations are groundless, false or fraudulent."  (Foley Decl. Exh. 5 at 42.)  However, the Policy specifically excluded coverage for intentional or criminal acts, or omissions of, an insured person:

**Losses We Do Not Cover Under Coverage X:**

1.    **We** do not cover any **bodily injury** or **property damage** intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any **insured person**.  This exclusion applies even if:

    a)    such **insured person** lacks the mental capacity to govern his or her conduct;

    b)    such **bodily injury** or **property damage** is of a different kind or degree than intended or reasonably expected; or

    c)    such **bodily injury** or **property damage** is sustained by a different person than intended or reasonably expected.

This exclusion applies regardless of whether or not such **insured person** is actually charged with, or convicted of a crime.

(Foley Decl. Exh. 5 at 42.) (the "Criminal Acts Exclusion Clause.")

*Legal Standard*

Summary judgment is appropriate if the discovery, disclosure materials on file, declarations and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a)-© (2015).  Summary judgment is not proper if material factual issues exist for trial.  *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).

The moving party has the burden of establishing the absence of a genuine issue of material

fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324. A nonmoving party cannot defeat summary judgment by relying on the "allegations in the complaint, or with unsupported conjecture or conclusory statements." *Hernandez v. Spacelabs Med., Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). Thus, summary judgment should be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The court must view the evidence in the light most favorable to the nonmoving party. *Bell v. Cameron Meadows Land Co.*, 669 F.2d 1278, 1280 (9th Cir. 1982). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir. 1976). Where different ultimate inferences may be drawn, summary judgment is inappropriate. *Sankovich v. Life Ins. Co. of N. Am.*, 638 F.2d 136, 140 (9th Cir. 1981).

However, deference to the nonmoving party has limits. The nonmoving party must set forth specific facts showing a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient." *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 252 (1986). Therefore, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted).

\ \ \ \ \

FINDINGS AND RECOMMENDATION          6                    [AMC]

*Discussion*

State law determines the court's interpretation of insurance polices and an insurer's duty to defend and indemnify. *Larson Constr. Co. v. Or. Auto Ins. Co.*, 450 F.2d 1193, 1195 (9th Cir. 1971); *Country Mut. Ins. Co. v. Larson*, Civil No. 08-6154-TC, 2010 WL 1039790, at *1 (D. Or. Feb. 26, 2010) (adopted by *Country Mut. Ins. Co. v. Larson*, Civil No. 08-6154-TC, 2010 WL 1039798 (D. Or. Mar. 19, 2010)).  Under Oregon law, the duty to defend is distinct from, and is broader than, the duty to indemnify under the terms of an insurance policy. *Ledford v. Gutoski*, 319 Or. 397, 403(1994); *Fireman's Fund Inc. Co. v. Ed Niemi Oil Co., Inc.*, No. CV 03-25-MO, 2005 WL 3050460, at *1 (D. Or. Nov. 9, 2005).  While a duty to defend is triggered by the allegations in a pleading, the duty to indemnify is proven by facts that establish a right to coverage. *Nw. Pump & Equip Co. v. Am. States Ins. Co.*, 144 Or. App. 222, 227 (1996).  Although an insurer's duty to defend depends on the pleading, the insurer has a duty to defend the insured only "if the claim made against the insured is one covered by the insurer." *Casey v. Nw. Sec. Ins.*, 260 Or. 485, 489 (1971). The insured bears the burden of proving coverage while the insurer has the burden of proving exclusion from coverage. *ZRZ Realty Co. v. Beneficial Fire & Cas. Ins. Co.*, 349 Or. 117, 127 (2010).  Thus, if the insurer can establish that the insured is precluded from coverage, it has neither the duty to defend nor the duty to indemnify the insured.

The court must construe exclusion clauses narrowly. *Am. Econ. Ins. Co. v. Hughes*, 121 Or. App. 183, 186 (1993).  "[A]ny ambiguity in an exclusion[] clause is strictly construed against the insurer." *Stanford v. Am. Guar. Life Ins. Co.*, 280 Or. 525, 527 (1977).  "For a term to be ambiguous in a sense that justifies resort to the foregoing rule, however, there needs to be more than a showing of two plausible interpretations . . . .  Competing plausible interpretations simply establish ambiguity

that will require some interpretive act by the court.  This triggers a series of analytical steps, any of which may resolve the ambiguity." *Hoffman Const. Co. of Alaska v. Fred S. James & Co. of Or.*, 313 Or. 464, 470 (1992).  A clause is ambiguous so as to require the court to construe it strictly against the insurer only after the court has examined interpretations of the clause (1) in light of the particular context in which the clause is used, and (2) in light of the policy as a whole.  *Id.*  If the ambiguity still exists after the court has examined the clause in these contexts, then the clause is strictly construed against the insurer because ambiguities cannot be permitted to survive; they must be resolved.  *Id.* at 470-71.

Allstate argues the Policy does not provide coverage for the Morgans for the negligence alleged in the Nicholson Complaint for three reasons: (1) the Criminal Acts Exclusion Clause bars coverage for the injuries resulting from Adam's criminal conduct; 2) the Joint Obligations Clause applies to also bar coverage for Debby; 3) there is no "occurrence" under the Policy.  Adam and Debby dispute each of these contentions, but also ask that the court stay this pending resolution of the Marion County lawsuit.  First, the court addresses Adam and Debby's motions to stay.  Then, the court turns to Allstate's arguments.

I.  Staying the Action for Declaratory Judgment

The Morgans seek to stay a ruling on this declaratory judgment action arguing that, while presenting their defense in this action, they may have to concede facts that demonstrate their negligence and conflict with their denial of liability in the Marion County case.  Allstate asserts, and the court agrees, this action should not be stayed, because this proceeding involves no new facts that would conflict with the Morgans' underlying case.

Granting or denying a motion to stay a declaratory judgment lies within the district court's

discretion. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995). In a declaratory judgment action addressing insurance coverage, a court may stay the proceeding if the action implicates the resolution of legal claims or facts in an underlying action. *See State Farm Fire & Cas. Co. v. Arbor Vineyards Homeowners Ass'n*, No. CV-10-504-HU, 2011 WL 198145, at *3 (D. Or. Jan. 18, 2011)("[A] concurrent coverage action is barred . . . [when] it would force the insured to abandon its denial of liability in the underlying lawsuit or to produce evidence tending to establish such liability.") Under these circumstances, a stay would avoid possible inconsistent factual determinations that would prejudice the insured. *Home Indem. Co. v. Stimson Lumber Co.*, 229 F. Supp. 2d 1075, 1086 (D. Or. 2001). Alternatively, if "the coverage question is logically unrelated to the issues of consequence in the underlying case, the declaratory relief action may properly proceed to judgment." *Id.* (quoting *Montrose Chem. Corp. of Cal. v. Superior Court*, 6 Cal. 4th 287, 301 (1993) (internal quotation marks omitted). "[T]here is also no black-letter rule prohibiting a court from determining the duty to indemnify issue while the underlying liability action is still in progress." *Charter Oak Fire Ins. Co. v. Interstate Mech. Inc.*, 958 F.Supp. 2d 1188, 1215 (D. Or. 2013).

When attempting to show it has no duty to defend, an insurer can rely only on facts that have been previously incontrovertibly established. *N. Pac. Ins. Co. v. Wilson's Distrib. Serv., Inc.*, 138 Or. App. 166, 174 (1995). In *North Pacific*, an insurer sought a declaration that it had no duty to defend or indemnify the insured in an underlying action. *Id.* at 169. The key question for the court was "whether the duty to defend may be negated by showing lack of coverage by evidence adduced for the first time in a declaratory judgment action commenced by the insurer before the underlying tort action has been concluded." *Id.* at 173. The insurer argued it had the right to develop facts that showed it did not have a duty to defend or indemnify, but the court rejected this argument. *Id.* at

172, 174.

The *North Pacific* court distinguished the case before it from *Casey*.  In *Casey*, the plaintiff was charged and found guilty of assault with a deadly weapon after hitting someone with a car. *Casey*, 260 Or. at 208.  The victim sued the plaintiff for personal injuries inflicted by assault and battery.  *Id.* at 209.  Because the policy excluded coverage for intentional acts, the insurer denied coverage.  *Id.*  The *Casey* court emphasized that, because the insured had been found guilty of committing an intentional criminal act in a previous proceeding, the insurer had no duty to defend. *Id.* at 210.

The *North Pacific* court observed that *Casey* did not address "the question presented here: whether the duty to defend may be negated by showing lack of coverage by evidence adduced for the first time in a declaratory judgment action commenced by the insurer before the underlying tort action has been concluded."  *North Pacific*, 138 Or. App. at 173.  The insured in *Casey* had been found guilty in a prior criminal proceeding of intentionally injuring the victim, which established incontrovertibly the fact the insurer relied upon to demonstrate lack of coverage; in contrast, the insurer in *North Pacific* did not rely on incontrovertible facts previously established, but instead attempted to establish new facts which could impact the underlying action.  *North Pacific*, 138 Or. App. at 173-44.  The court concluded:

> In short, none of the authorities relied upon by plaintiff, and none that we have found, supports its contention that it may establish facts in this declaratory judgment proceeding that have not been uncontrovertibly established in a separate proceeding, commenced before the underlying action is concluded, that would demonstrate that it has no duty to defend the Wilsons in the pending action commenced by C-CE.

*Id.* at 174.

Here, the facts are more similar to *Casey* than to *North Pacific*.  Adam's guilty plea to the crime of Assault 3 incontrovertibly established that an insured's criminal act resulted in Nicholson's injury.  To determine Allstate's coverage obligation here, the court need consider only this established fact and the terms of the Policy.  No new, controverted facts are needed to decide this case, and the Morgans are not put in a position of conflict with their defense of the Marion County action.  Therefore, the court recommends denial of the motion to stay.

## II.  Criminal Acts Exclusion Clause

Allstate asserts it has no duty to defend or indemnify Adam.  It argues that Adam's guilty plea to the charge of assaulting Nicholson establishes that his intentional and criminal acts caused the bodily injury for which Nicholson seeks damages in the Nicholson Complaint.  Because the Criminal Acts Exclusion Clause voids coverage for bodily injury resulting from criminal acts, Allstate has no duty to defend or indemnify.

Debby argues Allstate has a duty to defend because the court may look only at the underlying complaint and the Policy, and nothing else, when determining an insurer's duty to defend an insured. Because the complaint alleges only negligence, Debby contends that the Nicholson Complaint could impose liability, and Allstate, therefore, has a duty to defend.  Adam adds to Debby's argument by asserting that, even if the court looks to the underlying criminal conviction, the guilty plea and judgment of conviction do not conclusively show that Adam's criminal acts caused the bodily injuries alleged in the Nicholson Complaint.

### A.    *Duty to Defend Adam*.

When determining whether an insurer has a duty to defend an insured, a court looks at only

two documents:  the complaint and the insurance policy.  *Ledford*, 319 Or. at 399.  If the complaint, without amendment, alleges any basis for which the insurer provides coverage, the insurer has a duty to defend.  *Id.* at 399-400;  *Am. Cas. Co. v. Corum*, 139 Or. App. 58, 62 (1996).  Three exceptions to this general rule permit the court to look outside the complaint and policy:  (1) when extrinsic evidence provides the date an insurer was notified of a claim; (2) when a court needs "to determine whether an organization or individual was an insured under a policy;" and (3) when a previous judicial decision precludes coverage.  *Navigators Ins. Co. v. K & O Contracting LLC*, No. 3:12-cv-02076-HU, 2013 WL 6383878, at *5 (D. Or. Dec. 4, 2013) (internal quotation marks omitted).  The third exception, based on the doctrine of issue preclusion, applies to this case.

Issue preclusion prevents re-litigation of an issue that already has been determined in an earlier proceeding.  *State Farm Fire & Cas. Co. v. Sallak*, 140 Or. App. 89, 92 (1996).  If an earlier proceeding conclusively determined facts that exclude coverage, an insured is precluded from later asserting coverage is available.  *Id.*  While this exception is narrowly construed, courts have consistently determined criminal convictions can preclude coverage.  *Breese Homes, Inc. v. Farmers Ins. Exch.*, 353 Or. 112, 124 (2012); *Sallak*, 140 Or. App. 89; *Allstate Ins. Co. v. Deloretto*, Civ. No. 07–310-AA, 2007 WL 3408135 (D. Or. Nov. 15, 2007).

An insurer has no duty to defend when a criminal conviction incontrovertibly establishes the insurer does not cover an injury.  *Casey*, 260 Or. at 492.  In *Casey*, the insurance policy excluded coverage of bodily injuries resulting from intentional acts.  *Id.* at 486.  After driving an automobile into another person, the insured was convicted of assault with a deadly weapon, "an intentionally criminal act."  *Id.* at 486; 489.  The victim sued the insured for personal injuries, alleging assault and

battery as well as negligence. *Id.* at 486. The court acknowledged that an insured is precluded from relitigating in a civil case an issue already determined in a criminal case. *Id.* at 491. Despite the negligence claims, the court recognized that the criminal conviction's finding that the insured act was intentional was binding on the insured in any subsequent proceedings against the insurer. *Id.* at 490-91. Therefore, the court determined there was no coverage and, thus, no duty to defend. *Id.* at 492.

A guilty plea resulting in a criminal conviction can have a preclusive effect in a subsequent civil proceeding. *Sallak*, 140 Or. App. at 94. In *Sallak*, the defendant injured a police officer who was attempting to arrest him. *Id.* at 91. The defendant later pleaded guilty to resisting arrest and assaulting a public safety officer. *Id.* The police officer then filed a negligence action against the defendant and attempted to recover damages for the injuries he suffered in the arrest. *Id.* The defendant's insurance company claimed it had no duty to defend or indemnify the defendant because its policy excluded "bodily injury . . . which is either expected or intended by an insured[.]" *Id.* (alteration in original) (internal quotation marks omitted). The insurance company argued defendant's guilty plea to the assault charge established that the officer's injuries were "expected or intended" and, consequently, excluded under the express terms of the insurance policy. *Id.* The court acknowledged that defendant had a full and fair opportunity to be heard in the criminal proceeding, and knowingly and voluntarily waived his right to trial. *Id.* at 93. Because this admission, based in fact, was voluntarily and intelligently made, the court determined the guilty plea satisfied the "actually litigated" requirement of issue preclusion, thereby precluding coverage under the insurance company's policy. *Id.* at 94.

Here, Adam's guilty plea and criminal conviction preclude coverage and relieve Allstate of

any duty to defend or indemnify Adam against the allegations in the Nicholson Complaint.  The Criminal Acts Exclusion Clause clearly states that:  "**We** do not cover any **bodily injury** or **property damage** intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any **insured person**."[2]  On September 10, 2012, Adam pleaded guilty to two counts of Assault 3 for "unlawfully and recklessly . . . caus[ing] physical injury to Jonathan Nicholson" on September 4, 2012.  Although Nicholson alleges Adam's negligence, rather than his criminal conduct, caused the "brutal attack" and subsequent injury he experienced on September 4, this does not change that Adam's conduct was found criminal and Nicholson's injury resulted from it.  The Policy expressly excludes coverage of injury that is reasonably expected to result from any insured's criminal act, and, as in *Casey*, the criminal conviction is binding on Adam regarding Nicholson's negligence claims against him.  Because the injury alleged in the Nicholson Complaint resulted from the criminal act of Adam, an insured person, it is not covered under the Policy.  Consequently, Allstate does not have a duty to defend or indemnify Adam.

Adam argues that his guilty plea and criminal conviction do not conclusively establish that an intentional or criminal act by Adam caused the bodily injuries alleged in the Nicholson Complaint and, therefore, Allstate has a duty to defend because coverage is not incontrovertibly precluded.  Debby supplements the argument that Allstate has a duty to defend Adam by emphasizing that *Corum* calls into question *Casey*'s principle that previous criminal adjudications – matters outside the complaint and the policy – can establish the insurer has no duty to cover an insured.

Whether Adam's act was intentional is irrelevant because the Policy excludes bodily injury

---

[2] Neither party disputes that Adam is an "insured person" under the Policy.

reasonably expected to result from either intentional acts or criminal acts.  Here, the conviction established as a criminal act Adam's infliction of bodily injury on Nicholson.  The court may look to the previous criminal conviction because *Casey*, as *Navigators* recognized, still is good law. *Corum* does not help Adam and Debby because, unlike here, the alleged injury was not incontrovertibly precluded by the prior criminal conviction, and the *Corum* court thus never addressed the preclusive effect of the previous criminal conviction.

In *Corum*, a nurse was convicted of sexually abusing two of his patients.  *Corum*, 139 Or. App. at 64.  The patients also filed civil claims against the defendant, one alleging battery, nursing malpractice, and invasion of privacy; and the other alleging battery and negligence.  *Id.* at 63.  The nurse's primary insurance policy covered personal injuries arising out of his nursing services but did not cover intentional injuries.  *Id.* at 63; 63 n.4.  The civil complaint alleged that the nurse "acting within the course and scope of his employment, inserted his fingers into plaintiff's vagina and probed her genital area."  *Id.* at 64 (internal quotation marks omitted).  In its original decision, the Oregon Court of Appeals determined the insurer was not obligated to insure the nurse against the civil suits because sexual abuse by its very nature is intended to harm, but the Oregon Supreme Court reversed and remanded the decision.  *Id.* at 64.  On remand, the Court of Appeals acknowledged the allegation could constitute conduct other than sexual abuse because it also described a vaginal exam, within the scope of the nurse's professional services.  *Id.*  Because the alleged conduct could refer to either a negligently performed, covered vaginal exam or criminal sexual abuse, the court could not as a matter of law find the nurse had an intent to harm.  *Id.* at 64-65.  Therefore, the insurer had a duty to defend.  *Id.* at 65.

Here, Adam's criminal conviction incontrovertibly precludes coverage for the injury alleged

in the Nicholson Complaint.  Unlike *Corum*, "the brutal attack on the plaintiff" at Adam's September 4 party alleged in the Nicholson Complaint cannot refer to anything other than the same conduct to which Adam pleaded guilty as Assault 3, and for which he was convicted.  In his guilty plea, Adam admitted to the conduct when he submitted that he "unlawfully and recklessly while being aided by another person actually present cause[d] physical injury to Jonathan Nicholson" on September 4, 2011.  That the complaint alleges the attack was caused by Adam's negligence does not change that Adam's criminal conduct caused the bodily injury upon which Nicholson bases his lawsuit.

Accordingly, Adams's criminal act precludes coverage under the Policy, and Allstate has neither a duty to indemnify nor a duty to defend.

B.    *Duty to Defend Debby.*

Allstate also contends it has no duty to defend or indemnify Debby because of Adam's criminal act.  The court agrees, but for a reason different from that upon which Allstate relies for its contention but which is supported by the record the parties have submitted.  The Criminal Acts Exclusion Clause voids coverage for bodily injury that results from any insured's criminal acts.  Because Nicholson's injury resulted from Adam's criminal act, Allstate has no duty to defend or indemnify Debby against Nicholson's negligence claims.

There is no Oregon case law that directly addresses the application a criminal acts exclusion clause where negligence claims are alleged against an innocent insured but another insured's criminal conduct caused the injury at issue.  Lacking a decision from the state's highest court, this court must use intermediate appellate court decisions, decisions from other jurisdictions, and even treatises and restatements to determine the issue.  *S.D. Myers, Inc. v. City & Cnty. of San Francisco*, 253 F.3d 461, 473 (9th Cir. 2001).

Ninth Circuit case law provides guidance here, as the court has previously addressed language that mirrors the exclusion act in this case. In *Am. States Ins. Co. v. Borbor by Borbor*, 826 F.2d 888 (9th Cir. 1987), the Ninth Circuit held that the term "any insured" in a criminal acts exclusion clause can unambiguously void coverage under a policy. *Id.* at 894. In *Borbor*, the husband and wife were separately insured under a policy that also insured their nursery school. *Id.* at 891. The husband was convicted of molesting children who attended the school. *Id.* at 890. The children and their parents then sued both the husband and wife for damages. *Id.*

Determining the wife was at most negligent, the court acknowledged that a California statute incorporated into the policy acted as an exclusion clause. *Id.* at 891-92. This language stated that "[a]n insurer is not liable for a loss caused by the wilful act of the insured." *Id.* at 891 (alteration in original, internal quotation marks omitted). The court noted case law from other jurisdictions which held that, while the term "the insured" creates uncertainty on this point, the term "any insured" in exclusion clauses unambiguously includes anyone insured under the policy. *Id.* at 894. The court reasoned that "[h]ad [the insurer] intended that the wrongful act of *any* insured would void the policy, it could have unambiguously drafted and included such language in the contract." *Id.* Because the exclusion clause said "the insured" instead of "any insured," the court concluded that the clause did not bar the insurer's coverage of the allegedly negligent wife. *Id.* at 894-95.

A clause's exclusion of bodily injury resulting from the act of "any insured" also applies where the claims allege conduct that directly caused the injury and conduct that contributed to, but did not directly cause, the injury. In *Allstate Ins. Co. v. Gilbert*, 852 F.2d 449 (9th Cir. 1988), a husband sexually molested an adolescent girl on multiple occasions during a two-year period. The husband was convicted of six felony counts of child molestation. *Id.* at 450. The girl and her parents

then filed a civil action against both the husband and wife, alleging negligence against both the husband and the wife. *Id.* During the two years the molestations took place, the husband and wife were covered by two consecutive homeowner's insurance policies. *Id.* The first policy excluded coverage for "[b]odily injury or property damage intentionally caused by an insured person[,]" and the second excluded "[b]odily injury or property damage which may reasonably be expected to result from the intentional or **criminal** acts of an insured person or which are in fact intended by an insured person." *Id.* at 450-51 (emphasis in original) (internal quotation marks omitted).

After determining Allstate had no duty to defend the husband, the court rejected the wife's argument that the term "an insured person" applies only to the insured committing the triggering act. *Id.* at 453-54. It applied *Borbor*'s finding that an "insurer may void [a] policy by using appropriate language, [such as] '**any insured**,' in its policy **exclusion**." *Gilbert*, 852 F.2d at 454 (emphasis in original). The court also confirmed that "an insured," which it equated with "any insured," encompassed all individuals insured under the policy. *Id.* The court then held "that by excluding insurance coverage for injury . . . intentionally caused by 'an insured person,' [the insurer] unambiguously excluded coverage for [injuries] caused by the intentional wrongful act of ***any insured*** under the policies." *Id.* (emphasis in original). The court thus determined the policy excluded coverage for the innocent wife as the negligence claims against her resulted from intentional acts by an insured under the policy: "The . . . complaint seeks to recover damages for injuries intentionally caused by Albert Gilbert, 'an insured person,' under the policies. Coverage for these injuries is thus precluded whether compensation is sought from Albert or Margaret.". *Id.* As a result, the insurer had no duty to defend or indemnify the wife. *Id.*

In this case, the Criminal Acts Exclusion Clause is unambiguous in its use of "any insured." The relevant clause states that Allstate "do[es] not cover any **bodily injury** . . . intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, of any **insured person**."  As the Ninth Circuit recommended in *Borbor* and construed in *Gilbert*, Allstate has used language that unambiguously voids the Policy for bodily injuries that result from criminal acts of anyone insured under the Policy.  The Criminal Acts Exclusion Clause uses "any insured," rather than "the insured."

*Gilbert* also implicitly addresses and resolves Debby's argument here that her alleged negligent acts are a separate, and thus covered, contributing cause of the damages Nicholson seeks. The *Gilbert* court determined that "an insured" is equivalent to "any insured," encompasses all insureds under the policy, and therefore excludes all insureds from coverage for injury resulting from the intentional acts of anyone insured under the policy.  In making that determination, the court made no distinction between the husband's intentional act that directly injured the girl and the wife's alleged negligence that contributed to the girl's injury.  Instead, the court concluded that the clauses excluded all insureds from coverage, including insureds whose acts were separate and allegedly only negligent but which gave rise to the bodily injury at issue.

Similarly, here Allstate's use of "any insured person" in the Criminal Acts Exclusion Clause in the Policy encompasses everyone insured under the Policy.  Debby is alleged to have engaged in negligent acts and omissions that contributed to Nicholson's injuries, conduct separate and different from the criminal act of her son, Adam, who also is an insured.  As *Gilbert* demonstrates, however, this distinction does not affect the exclusion's application to bar coverage for Adam as well as for Debby.  Because the Policy expressly excludes coverage of bodily injury resulting from any insured's

criminal act, the negligent conduct of another insured that may have contributed to the injury is encompassed under such an exclusion.  Thus, Allstate does not have a duty to defend or indemnify the negligence claims against Debby.

The court's conclusion here is not inconsistent with Judge Coffin's conclusion in *Larson*, No. CV 08-6154-TC, 2010 WL 1039790.  In *Larson*, a sixteen-year-old son shot and injured two other boys while living in his parents' house and insured under their insurance policy.  *Id.* at *2.  The son pleaded guilty to two counts of assault.  *Id.*  The injured boys then filed complaints alleging the son acted intentionally or recklessly and his parents also were negligent.  *Id.*  The parents' policy contained a criminal acts exclusion clause that provided:

> [The Insurer's Liability Coverage] does not apply to . . . "Bodily Injury" or "property damage" arising from any **criminal** act.  **Criminal** act means any act or omission which is **criminal** in nature or for which a penal statute or ordinance permits or requires any term of imprisonment or sentence or public service duties.  This **exclusion** applies regardless of whether **any** "**insured**" is actually charged with or convicted of a crime and regardless of whether **any** "**insured**" subjectively intended the "bodily injury" or "property damage" for which a claim is made."

*Id.* (emphasis in original).

Although Judge Coffin found the son's guilty plea precluded coverage for the son, he determined it did not preclude coverage for the parents.  *Id.* at *4.  He concluded that, because the parents were not a party, or in privity with a party, in the previous criminal proceeding, it did not preclude the issue of whether the exclusion clause barred the parents' coverage.  *Id.*  Because the application of the exclusion act as to the parents was not precluded and there were other issues of disputed facts, Judge Coffin denied the insurer's motion for summary judgment.  *Id.* at *5.

While issue preclusion thus did not apply to bar coverage for the parents in *Larson*, it applies here to bar coverage for Debby.  The Policy's Criminal Acts Exclusion Clause contains different

language than the exclusion clause in *Larson*.  In *Larson*, the clause excluded coverage for "'bodily injury' . . . arising from any **criminal** act."  Although *Larson* contained the term "any insured" in certain places in its exclusion clause, the term appears only at the end of the clause and not where the clause specifies that bodily injury from any criminal act is excluded.  The *Larson* clause did not clearly establish the parents were in privity with their son and, therefore, issue preclusion did not apply.

In the present case, the Criminal Acts Exclusion Clause bars coverage for "**bodily injury** . . . intended by, or which may reasonably be expected to result from the intentional or criminal acts . . . of any insured person."  The Policy's Criminal Acts Exclusion Clause excludes coverage of all insureds for bodily injury resulting from the criminal act of any insured; this use and placement of establishes Debby is in privity with Adam, and Adam's conviction for assaulting Nicholson triggers the exclusion.  Privity exists when "[a] person may be legally affected by a judgment, broadly speaking, by reason either of being a party or equivalent participant in the litigation, or from having a legal relationship that is derivative from one who was a party, or in being so situated that his own rights or obligations are conditioned in one way or another by a judgment involving another person." *State Farm Fire & Cas. Co. v. Reuter*, 299 Or. 155, 162 (1985) (quoting RESTATEMENT (SECOND) JUDGMENTS § 344 (1982)) (internal quotation marks omitted).  Thus, if privity is a concept that applies to an exclusion clause such as the clause here, then Debby and Adam are in privity, for purposes of coverage and exclusion of coverage, by the terms of the Policy.  Consequently, issue preclusion applies.

Debby relies on several cases from other jurisdictions to argue Allstate has a duty to defend

her on the negligence allegations.[3]  However, the cases Debby relies on in support of this argument either involve different policy language from the language at issue in this case or are unpersuasive.

In *Allstate Ins. Co. v. Worthington*, 46 F.3d 1005 (10th Cir. 1995), the corresponding provision in the insurer's policy stated it did not cover bodily injury that resulted from "[a]n act or omission intended or expected to cause **bodily injury** . . . ." (emphasis in original).  The language did not encompass bodily injury caused by "any insured" or "an insured," and it did not address bodily injury resulting from a criminal act.  *Id.* at 1008.  The court noted that the exclusion clause did not explicitly state who must perform the triggering act or omission, and did not clearly identify whether the intentional act by one insured would preclude coverage for related negligence by another insured.  *Id.* at 1008-09.  Thus, the exclusion language at issue in *Worthington* differed materially from that contained in the Policy.

Additionally, *Worthington* is not persuasive authority because it is contrary to the Ninth Circuit's decision in *Gilbert*.  *Worthington* rejected the insurer's use of *Gilbert* to support its argument that if injuries and damages arise from one insured's intentional or criminal conduct, the insurer has no obligation to defend any co-insured sued for negligence.  *Id.* at 1010.  Critical to the issue here, *Worthington* distinguished *Gilbert* because *Gilbert* involved use of the specific "an insured" language in the pertinent exclusion clauses, *id.*, language comparable to the Policy's exclusion clause.  Thus, *Gilbert* is instructive here because the language of the Policy's Criminal Acts Exclusion Clause in the present case is similarly unambiguous.

---

[3] Debby uses these cases to support her argument that the Joint Obligations Clause does not void Allstate's duty to defend her, but the court will address the cases here as they also contain exclusion clauses relevant to the Policy's exclusion clause.

Similarly distinguishable is *C.P. v. Allstate Ins. Co.*, 996 P.2d 1216 (Alaska 2000). There, an adult son living with and insured under his parents' homeowners policy, assaulted an adolescent girl in his parents' house. Under the policy, the insurer covered and defended claims in which bodily injury arose from an accident but excluded coverage for injury resulting from intentional and criminal acts. *Id.* at 1219. The exclusion in *C.P.*, however, did not contain the "any insured" or "an insured" language used in the Policy's exclusion, which excludes coverage of all insureds for the criminal act of one insured; instead, its vague exclusion covered only "injury resulting from intentional or criminal acts." *Id.*, at 1219, 1224-25.

In *Wasik v. Allstate Ins. Co.*, 351 Ill. App. 3d 260 (2004), an insurer denied coverage to a policy holder whose garage was destroyed by a fire started by a member of the household. The insurer denied coverage because it claimed the fire was started by another insured and, therefore, coverage was excluded under the policy. *Id.* at 261. The policy did not cover property damage caused by the [i]ntentional criminal acts of or at the direction of any insured . . . ." *Id.* at 264. Although the court acknowledged the exclusion was triggered by acts of "any insured," it determined the clause could be read more than one way. *Id.* at 266. The court followed Illinois law in determining the clause did not clearly state the policy will be void for all insureds in the event of wrongful behavior by any insured. *Id.* at 266.

The cases Debby relies upon are distinguishable from the Ninth Circuit's decisions in *Borbor* and *Gilbert*. The exclusion clause at issue here is not ambiguous: if the bodily injury results from any insured's criminal act, then no insured is covered for claims based on that bodily injury. Consequently, Debby is not covered under the Policy, and Allstate has neither a duty to defend or indemnify her.

FINDINGS AND RECOMMENDATION          23          [AMC]

IV. Joint Obligations Clause and Occurrence

Allstate also argues that the Joint Obligations Clause excludes coverage for Debby and that the conduct alleged in the Nicholson Complaint does not qualify as an "occurrence" under the Policy. Because the Criminal Acts Exclusion Clause is dispositive of Allstate's duty to defend and indemnify the Morgans, the court does not address these issues.

*Conclusion*

Allstate's motion (#37) for summary judgment should be GRANTED. Allstate has no obligation to defend or indemnify the Morgans against the negligence claim asserted against them by Nicholson in the case of *Jonathon Patrick Nicholson v. Adam William Morgan, et al*, No. 13C-20292. Adam and Debby's cross-motions (#41, #42) for summary judgment and to stay this proceeding should be DENIED.

Scheduling Order

The Findings and Recommendation will be referred to a district judge for review. Objections, if any, are due **May 28, 2015**. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 11th day of May, 2015.


        /s/ John V. Acosta
        JOHN V. ACOSTA
        United States Magistrate Judge


FINDINGS AND RECOMMENDATION          24          [AMC]